**ORIGINAL**

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF TEXAS DALLAS DIVISION

CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED
2023 JAN -6 AM 11:09
DEPUTY CLERK_____ mb

| | |
|---|---|
| ANGELINE ASH, *Plaintiff* § § § | |
| v. § § § | 3-23CV0034-K |
| SERVICE KING PAINT AND BODY LLC, *Defendant* § § § § | Civil Action No. _____ |
| LOCKE LORD LLP, *Defendant* § § § § | |
| ANCESTRY.COM DNA LLC, *Defendant* § § § § § | |
| 23andMe, INC, *Defendant* § § | |

---

**PLAINTIFF'S ORIGINAL COMPLAINT**

---

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Plaintiff, Angeline Ash ("Plaintiff") complaining of Defendants Service King Paint and Body, LLC ("Service King" or "Defendant"), Locke Lord, LLP ("Locke Lord" or "Defendant"), Ancestry.com DNA, LLC ("Ancestry.com" or "Defendant"), and 23andMe, Inc ("23andMe" or "Defendant") for causes of action related to 42 U.S.C § 1981 and respectfully shows the Court as follows:

### I.

### THE PARTIES

1.01 Plaintiff Angeline Ash is an American female with Italian, Hebrew and Cuban

---

1

Plaintiff's Original Complaint
Angeline Ash v Service King Collision Repair, LLC, Locke Lord, LLP, Ancestry.com DNA LLC, 23andMe, Inc.

heritage. She is appearing pro se, and is a Texas resident.

1.02   Defendant Service King Paint & Body LLC. is a Texas Limited Liability Company with a business address of 2375 N. Glenville Drive, Richardson, TX 75082. Defendant can be served with process by service upon its agent for service of process in Texas: CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, TX 75201.

1.03   Defendant Locke Lord, LLP is a Delaware Limited Liability Partnership with a business address of Chase Tower, 2200 Ross Avenue, Suite 2800, Dallas, Texas 75201. Defendant can be served with process by service upon its agent for service of process in Delaware: Corporation Trust Center, 1209 Orange Street, City of Wilmington, DE 19801.

1.04   Defendant Ancestry.com DNA LLC, is a Virginia Limited Liability Company with a business address of 1300 W. Traverse Parkway, Lehi, UT 84043. Defendant can be served with process by service upon its agent for service of process in Utah: CT Corporation System, 1108 East South Union Avenue, Midvale, UT, 84047.

1.05   Defendant 23andMe, Inc. is a Delaware for-profit Corporation with a business address of 223 N. Mathilda Avenue, Sunnyvale, CA 94086. Defendant can be served with process by service upon its agent for service of process in Delaware: Incorporating Services, Ltd., 3500 South Dupont Highway, Dover, DE 19901.

II.

## JURISDICTION AND VENUE

2.01   Jurisdiction is conferred on this Court by 28 U.S.C. § 1331, 42 U.S.C. § 1981.

2.02   Venue for all causes of action stated herein lies in the Northern District of

2

Plaintiff's Original Complaint
Angeline Ash v Service King Collision Repair, LLC, Locke Lord, LLP, Ancestry.com DNA LLC, 23andMe, Inc.

Texas because the acts alleged in this Complaint took place, in whole or in part, boundaries of this District, pursuant to 28 U.S.C. 1391.

## III.

## FACTUAL ALLEGATIONS

3.01   Plaintiff is a 53 year old female of Italian, Hebrew and Cuban heritage.

3.02   Both Ancestry.com DNA and 23andMe are consumer-based ancestry testing companies. They sell at home ancestry and tests to enable users to determine a general idea of their race and ethnic mnake-up. Once a consumer purchases a test, it is mailed to them. They provide a saliva sample in a container provided by the companies, and mail the sample back for analysis. Both companies claim their testing and subsquent analysis of the results is proprietary. These companies sell tests nationwide.

3.03   Plaintiff suffered extreme harassment specifically from African-Americans and Jewish-Americans, which is detailed herein. Any "identity" Plaintiff had at any point as an African-American female was due to the ethnicity results provided by Ancestry.com.

3.04   Plaintiff asserts that being Hebrew is an ethnicity and a race. Jewish is a faith that anyone can join by asciibing to a set of religious doctrines and practice, thereby it is not a race nor is it an an ethnicity. One can be Hebrew, but not Jewish, nor does one need to be Hebrew to be Jewish. Beacause being Jewish is a set of beliefs, a faith, not all Jews are Semites. However, all Hebrews are Semites, whether they practice the Jewish faith or not. Plaintiff therefore asserts that the retaliation and harassment she received from the American Jewish community and others was anti-Semetic in nature.

3.05   In 2021, Plaintiff became aware that the source of the race based harassment,

3

Plaintiff's Original Complaint
Angeline Ash v Service King Collision Repair, LLC, Locke Lord, LLP, Ancestry.com DNA LLC, 23andMe, Inc.

extreme distress in finding a job, and the and subsequent damage to her career was due to the Ancestry.com DNA results, the 23andMe documentary, as well as the hacking of these companies' relatives matching system by Dyson Chase. Plaintiff contacted Blackstone, Ancestry.com and 23andMe in 2021 and again in 2022, complaining of identity theft, and incorrect ancestry results. No Defendant responded, nor did Blackstone, nor did any company offer any resolution. In 2021, she demanded that both Ancestry.com and 23andMe provide written confirmation that they removed her DNA data from their systems.

3.06    Plaintiff asserts that the fake DNA test, fake relative matches, and the well-publicized documentary created by 23andMe was a concerted effort to deny her of her Hebrew heritage, associate her DNA with members of the Gee family, whose DNA appears in a criminal forensic database, associate her with Dyson Chase, a known identity thief, and ultimately create a stigma in her life around being the product of an African-American man who allegedly raped a white woman.

3.07    During the entire term of her employment with Service King Plaintiff experienced severe discrimination, retaliation, harassment and a hostile work environment, based upon her perceived race as African American, her actual race as Hebrew, and her color.

3.08    Plaintiff was employed by Service King as a Senior Director of Procurement from September 21, 2020 to April 9, 2021. Service King provides collision-repair services at retail locations nationwide.

3.09    At the time Plaintiff was hired, Service King was owned by Blackstone, Inc. a multi-billion-dollar private equity firm that also acquired Ancestry.com in August 2020.

3.10    Service King has more than 1,000 employees.

4

Plaintiff's Original Complaint
Angeline Ash v Service King Collision Repair, LLC, Locke Lord, LLP, Ancestry.com DNA LLC, 23andMe, Inc.

3.11   Plaintiff's compensation at Service King included a base annual salary of $172,000 plus an annual bonus of 20%. Plaintiff's earnings would have been at the rate of $206,400 with the indicated annual bonus.

3.12   During the time of her employment with Service King, Plaintiff reported to Kathy Kraay, whose title was Chief Financial Officer.

3.13   During the entire term of her employment with Locke Lord Plaintiff experienced severe discrimination, retaliation, harassment and a hostile work environment, based upon her perceived race as African American, her actual race as Hebrew, and her color, which consisted of the following.

3.14   Plaintiff was employed by Locke Lord as a Purchasing Manager from January 18, 2022 to August 17, 2022. Locke Lord provides legal services at offices worldwide.

3.15   Locke Lord has more than 500 employees.

3.16   Plaintiff's compensation at Locke Lord included a base annual salary of $135,000 plus an annual bonus of 10%. Plaintiff's earnings would have been at the rate of $148,500 with the indicated annual bonus.

3.17   During the time of her employment with Locke Lord, Plaintiff reported to John Paradyze whose title was Director of Purchasing.

3.18   Plaintiff filed against her previous employer, Farmer Brothers Co., a foreign for-profit Corporation for similar claims in 2020, case number 4:20-cv-00055-SDJ, filed 01/23/20 styled Angeline Houghtlin v. Farmer Bros. Co., based on being perceived as black, harassed for such, and experiencing racial slurs related to the perception of being an African-American female.

5

Plaintiff's Original Complaint
Angeline Ash v Service King Collision Repair, LLC, Locke Lord, LLP, Ancestry.com DNA LLC, 23andMe, Inc.

3.19     The incidences of discrimination, retaliation, harassment and hostile environment experienced by Plaintiff, at both Defendants Service King and Locke Lord, as well as Defendants Ancestry.com and 23andMe's false relationship "matches" (which resulted in identity theft), are included the following incidences, which have been summarized for this Complaint.

**Incident 1: The False Rape Claim, Genetic Markers and Subsequent DNA Test**

3.20     In 1998, Plaintiff's mother, Edie Cathleen Harlow, a former Marine, who was undergoing psychiatric treatment at the Veteran's Affairs hospital in Bonham, Texas, called to tell Plaintiff that her real father was a man named Garland Gee, a man of African-American descent, who was also a former Marine. Ms. Harlow stated that she had been raped while in the Marines by Garland Gee, and that Plaintiff was the product of this rape. Plaintiff was shocked at this news and doubtful of the information. Plaintiff's father is James Francis Palumbo, she had always known him to be her father, and she asked Ms. Harlow why she waited 30 years to share this information. Ms. Harlow stated that she was attending group therapy while at the VA hospital with other women, some of whom had undergone sexual trauma while in the military, and the experiences these women shared prompted Ms. Harlow to "remember" that she had also experienced sexual trauma while in the Marines. Plaintiff knew she could not be the product of this rape, if in fact it had even occurred, because she was born almost two years after Ms. Harlow left the Marines. Plaintiff was born to Ms. Harlow and James Francis Palumbo, at Westover Air Force Base on July 21, 1969. James Francis Palumbo was a seargeant in the Air Force at the time of Plaintiff's birth.

6

Plaintiff's Original Complaint
Angeline Ash v Service King Collision Repair, LLC, Locke Lord, LLP, Ancestry.com DNA LLC, 23andMe, Inc.

3.21    Plaintiff immediately contacted her father, James Francis Palumbo, who stated that he was her real father and that he assumed Ms. Harlow was lying, in order to file a lawsuit against the United States governement. Ms. Harlow has a history of false rape claims, including one against a the Catholic Diocese of Dallas, claiming a priest made advances toward her. This claim was later dismissed by the Diocese.

3.22    In 2006, Ms. Harlow told Plaintiff that she received a lump sum settlement from the U.S. government as well as monthly benefits as a result of filing against the US governement for being sexually assaulted by Garland Gee while in the Marines. Plaintiff did not see any court documents, nor was she ever contacted or deposed.

3.23    In 2014, Plaintiff visited a rheumatologist in Dallas, named Renuka Basavarju, complaining of extreme joint pain. Dr. Basavaraju conducted extensive blood tests and x rays to determine the source of Plaintiff's pain, since based on the physical exam, the problem did not seem to be rheumatoid arthritis. She asked Plaintiff to return in three weeks for the results. When Plaintiff returned, Dr. Basavaraju opened the consultation by asking Plaintiff about her ancestral background. Plaintiff explained who she knew her parents to be. She also shared that her mother claimed her father was a man of African-American descent, but that she belived this information to be false.

3.24    Plaintiff's maternl grandfather, Oscar Tinsley Ash's ancestors come fom the Caucasus region, although the name Ash is of Syrian-Hebrew origin. Plaintiff's father, James Francis Palumbo's family is from Calabria and Sicily. Although Italian, this family belongs to a discrete group of ancient Hebrews who were exiled to Sicily and Calabria in the first century A.D., upon the detruction of the second temple in Jerusalem. There are a handful of Italian

7

Plaintiff's Original Complaint
Angeline Ash v Service King Collision Repair, LLC, Locke Lord, LLP, Ancestry.com DNA LLC, 23andMe, Inc.

surnames associated with this historic exodus; several of Plaintiff's Italian ancestors are among this group, who tend to intermarry, and do not practice Judaisim.

3.25    Dr. Basavaraju shared that she saw very distinct genetic markers in Plaintiff's blood work, that indicated ancient origins, and implied that the analysis indicated Plaintiff to be of Khazarian descent. The Khazar Empire was located in the Caucasus region, and is thought by modern European Jews to be their missing link to the Holy Land. Dr. Basavaraju diagnosed Plaintiff with Ankylosing Spondilitis, and prescribed Humira, an injectable drug designed to treat rheumatoid arthritis. Plaintiff took this drug for approximately 6 months.

3.26    In 2019, Plaintiff again visited Dr. Basavaraju for a check up. She had not visited Dr. Basavaraju since 2014, but when Dr. Basavaraju entered the exam room, she said to Plaintiff: "I remember you; you're the one I wrote the paper about." Plaintiff asked her what she meant, and the doctor said that she had written a research paper on Plainiff's unusual genetic markers associated with this Khazar lineage.

3.27    In 2015, in an effort to refute her mother'sclaims regarding her ancestry, Plaintiff purchased a consumer ancestry test from Ancestry.com via their website. After providing the DNA sample, Plaintiff asked her former husband, Bret Williamson to mail the test to Ancestry.com for analysis.

3.28    Plaintiff purchased two tests from Ancestry.com; one for herself and one for Mr. Williamson, who claimed to have mailed his seperately. Plaintiff now believes the DNA test that Mr. Williamson mailed on her behalf was that of a someone else who is of mixed race heritage. After Plaintiff provided her DNA sample, the test was in his custody until it was mailed back to Ancestry.com; the packaging likely was compromised and replaced with a different sample.

8

Plaintiff's Original Complaint
Angeline Ash v Service King Collision Repair, LLC, Locke Lord, LLP, Ancestry.com DNA LLC, 23andMe, Inc.

3.29   Plaintiff received the results of her ancestry test in March of 2015 which indicated 35% sub-saharan African DNA. Plaintiff was surprised at the analysis, since there was no known sub-saharan African ancestry in her immediate family. Plaintiff has since come to believe that Mr. Williamson switched the ancestry sample prior to mailing it, in an effort to preserve the monthly governement benefits Ms. Harlow's receives as a result of her rape claim.

3.30   Once a consumer receives their ancestry results, they are guided to create an account on Ancestry.com to see the analysis of their DNA, and connected with known or unknown relatives who have also taken the test. These relatives are known as "matches" and range from parents and siblings to distant cousins.

3.31   Ancestry.com allows a comsumer to download a raw data file of their ancestry results and upload those results to other consumer genetic testing companies. This allows a consumer to not only receive an ancestry analysis from another company without paying for a new test, but it also allows those who are interested in geneological research to receive family matches with relatives who may have taken one ancestry test, but not another. Plaintiff did not see any Palumbo relatives in her match list on Ancestry.com, so in 2017 she chose to upload her data file to 23andMe, to connect with more relatives.

**Incident 2: Dyson Chase, Identity Theft, 23andMe & GedMatch**

3.32   In June 2017, Plaintiff was contacted, through the 23andMe email account, by a woman named Dyson Symone Chase, who claimed to be her sister through Garland Gee. Ms. Chase provided extensive detail about Garland Gee, his life, her own life story, and was particularly interested in the fact that Plaintiff had a law degree, stating that she had "always

9

Plaintiff's Original Complaint
Angeline Ash v Service King Collision Repair, LLC, Locke Lord, LLP, Ancestry.com DNA LLC, 23andMe, Inc.

wanted to be a lawyer" and was currently attending an online law school. Simultaneously, Plaintiff noticed many people with the name "Gee" showing up in her relatives lists on 23andMe and Ancestry.com.

3.33 Within two months of meeting Dyson Chase, Plaintiff began experiencing identity theft issues (loans taken out in her name, fraudulent charges in her checking account, among other issues), and she began experiencing problems at her job at Farmer Brothers Co. None of the issues were based on perfomance. Plaintiff experienced name-calling and other experiences that seemed to stem from her "identification" as African-American, or the presumption that Garland Gee, an African-American man who had allegedly raped her mother, a white woman, was her father. Meanwhile, the identity of Plaintiff as an African-American was created by Ancestry.com, via their ethnic analysis.

3.34 Ms. Chase told Plaintiff that her birth name was Kirstin Reichert, and that she was the product of an affair that Garland Gee had with her mother. Ms. Chase told Plaintiff that she had her named legally changed to Dyson Chase after a friend had ruined Ms. Chase's credit by taking out loans and stealing money. Ms. Chase said that this friend had broken into her email accounts and sent emails as if they were coming from Ms. Chase to Ms. Chase's friends, employer and colleagues, thereby ruining Ms. Chase's personal and professional reputation.

3.35 During the course of the time Plaintiff knew Dyson Chase, she experienced many instances of someone sending emails from her email accounts, an unknown phone number attached to her email accounts as a verification number (so that this number would receive updates when Plaintiff changed her password), multiple instances of money being taken from her checking account, although she was regularly changing the password, someone having access to

10

Plaintiff's Original Complaint
Angeline Ash v Service King Collision Repair, LLC, Locke Lord, LLP, Ancestry.com DNA LLC, 23andMe, Inc.

her Sprint cellphone account (via Plaintiff's old phone number, which had been removed from the Sprint account, yet was being used for password changes), and associates receiving text messages from Plaintiff's previous phone numbers and assuming that the messages came from Plaintiff. Due to these ongoing identity theft issues, Plaintiff has changed her phone number three times in the past two years.

3.36   Ms. Chase's name change inludes the middle name Symone, and once Plaintiff began to suspect identity theft, she asked Ms. Chase why she chose that name. Plaintiff's family (Palumbo) has ancient Hebrew origins. De Simeone is the surname of Plaintiff's grandfather's (Vito Palumbo) grandmother, and is related to one of the twelve tribes of Israel. The use of this name, as part of a name change by Dyson Chase, seemed to be targeted at Plaintiff's Hebrew heritage.

Explanation Regarding GedMatch:

3.37   As stated by Plaintiff, in June of 2017, Plaintiff uploaded the raw data of her ancestry test from Ancestry.com to 23andMe and a third-party file share site called GedMatch. GedMatch is a site that connects potential relatives using raw data files from the Ancestry.com and 23andMe in order to allow users to expand their relative matches. GedMatch does not require a prerequisite ancestry test. The data received from users is used by law-enforcement on a separate platform called GedMatch Pro. The process of providing users with ancestry and relationship connections via a free site like GedMatch is a work-around that enables consumer genetic/ancestry testing companies to provide the results of their analyses to law enforcement. This loophole bypasses any consumer privacy constraints or agreements Ancestry.com or 23andMe have with consumers. In other words, no warrant needed.

---

11

Plaintiff's Original Complaint
Angeline Ash v Service King Collision Repair, LLC, Locke Lord, LLP, Ancestry.com DNA LLC, 23andMe, Inc.

3.38    Plaintiff has since found numerous professional studies and peer-reviewed articles that decribe how a malicious user could generate any false relationship they wanted by accessing another user's raw data on GedMatch, and highlighting a fraction of the victim's DNA to create a false relative match by splicing in their own raw data. Such malicious user would then upload their "created" raw data file to either 23andMe or Ancestry.com to construct a fake genetic profile to impersonate someone's relative. The reasons behind this could be to appear as someone's long lost child, or, as in Plaintiff's situation, someone they're targeting for identity theft. Plaintiff asserts that Dyson Chase, is a malicious user of GedMatch, constructed a fake genetic profile to impersonate Plaintiff's relative.

3.39    In 2021, Plaintiff went back to her GedMatch account, at this point realizing the direct connection between the harassment she'd experienced, the identity theft isues and how all seemed to coincide with the appearance of Dyson Chase and the Gee family. She saw that Ms. Chase created an account on GedMatch seven days after Plaintiff uploaded her raw data to 23andMe and GedMatch. Plaintiff asserts that Dyson Chase, is a malicious user of GedMatch, who constructed a fake genetic profile to impersonate Plaintiff's sister for the purpose of identity theft.

3.40    Plaintiff asserts the irrefutable reality that genetic information, unlike other forms of private property, is shared among family members and thereby is not individualistic in nature. Applying to these facts, through the DNA of "shared relatives" via a consumer ancestry site or GedMatch, an unknowing individual could be targeted for criminal investigation, and their medical, behavioral and other traits may be revealed or implied. Individuals who have never been arrested, and whose DNA could not be legally placed in any forensic database directly

12

Plaintiff's Original Complaint
Angeline Ash v Service King Collision Repair, LLC, Locke Lord, LLP, Ancestry.com DNA LLC, 23andMe, Inc.

(such as CODIS) could, nonetheless be profiled, targeted, and surveilled based on a partial DNA match to a faked relative. This is the potential damage and harm caused when a malicious user creates a false relative match in GedMatch, in addition to identity theft. GedMatch's professional platform, GedMatch Pro is a platform designed specifically to support police and forensic professionals with investigative comparisions to consumer GedMatch data to further criminal investigations. Essentially, law enforcement uses the raw data from GedMatch profiles to search, identify and locate genetic matches to crime scene DNA. If a malicious user has created a false relative match, the targeted victim now appears as being "related" and thereby as having the same genetic identity as the malicious user who may be responsible, or whose true family members may be responsible for violent crimes such as rape, murder, etc. Specifically, Ms. Chase told Plaintiff , upon meeting her, that Garland Gee's son had a rape conviction.

3.41 Plaintiff asserts that because Dyson Chase created false raw data file on GedMatch, using Plaintiff's data file spliced with her own, Ms. Chase's sole intent was criminal in nature. Ms. Chase the unploaded the raw file to 23andMe, and subsequently appeared on the matched relatives list. Interestingly, and which speaks to the falseness of this match, the "match" reflected a rate that was higher than Plaintiff's actual half-siblings (35% versus 25% for the real siblings). 23andMe states on their website that: "Our simulations have concluded that we can confidently detect related individuals if they have one continuous region of matching SNPs (sSingle Nucleotide Polymorphisms) that is longer than our minimum threshold of 7cM (centiMorgans) long and at least 700 SNPs." As an example of their expeetise in relatives matching, they claim a 90% confidence level in matching a genetic relationship with a 3rd

cousin. https://customercare.23andme.com/hc/en-us/articles/212170958-DNA-Relatives-Detecting-Relatives-and-Predicting-Relationships (last checked January 5, 2023).

3.42    Ms. Chase also uploaded her raw data file to Ancestry.com, and appeared there as Plaintiff's "immediate relative, most likely half-sibling." Ancestry.com, according to their website, uses a two-step statistical method to guarantee their matching accuracy: "…[b]y using both matching statistics simultaneously, we achieve nearly 100% accuracy in distinguishing close relationships—identical twins, parent-child, full siblings, and half siblings." https://www.ancestry.com/corporate/sites/default/files/AncestryDNA-Matching-White-Paper.pdf?_ga=2.5824567.508612736.1672929705-640930088.1672929705 (last checked January 6, 2023).

3.43    Plaintiff asserts that because both Defendants Ancestry.com and 23andMe guarantee their proprietary relatives matching technology, it is irrelevant whether the data for such was legitimate or whether it came from a maliciously created data file constructed on a third-party site such as GedMatch. Because of Defendants' known relationship with law enforcement and GedMatch, they have an inherent duty to protect consumers from fake data files and malicious attacks of identity theft that have the potential to create a genetic relationship between an innocent consumer and a criminal whose DNA appears in a forensic database. Ironically, Defendants' lack of responsibility and owndership of the impact and potential negative impact their work has on the lives of thir consumers undermines what their entire industry is based on: trust.

3.44    In 2018, a few months after Plaintiff was contacted by Dyson Chase, Plaintiff was contacted by a producer for 23andMe, who wanted to connect Plaintiff to a documentary

14

Plaintiff's Original Complaint
Angeline Ash v Service King Collision Repair, LLC, Locke Lord, LLP, Ancestry.com DNA LLC, 23andMe, Inc.

filmmaker. They were interested in filming a short documentary related to Plaintiff "finding" her "sister" via their ancestry relatives match list. The seven-minute, short film documentary, called "Angeline", premiered April 2019, in New York City, and both Plaintiff and Dyson Chase attended.

3.45   The documentarian was a Jewish woman named Nancy Schwarzman, whose career as a documentarian is based on rape culture. Knowing this, Plaintiff told Ms. Schwarzman in writing and in person that her mother's story was a false rape claim, that she was investigating how she could have been matched to Ms. Chase, since she didn't believe Garland Gee was her father, and that she did not want the alleged rape mentioned in the documentary. Plaintiff felt that it was unfair to accuse an African-American man of raping a white woman, when in fact in this instance, it is not true. However, Plaintiff was open to filming the documentary regarding her relationship with Ms. Chase, if only for evidentiary purposes. 23andMe seemed invested in reinforcing the idea that Plaintiff was African-American, although Plaintiff made it clear that she wasn't confident about any relationship to Garland Gee.

3.46   In February of 2021, while working at Service King, a former vendor from Plaintiff's job at Farmer Brothers Co., contacted her on LinkedIn and asked if he could call her. When Plaintiff spoke with him, he told her that she needed to "talk to her sister." Plaintiff asked what sister, since, although she and the vendor had a friendly relationship while they worked together, she had never shared any details of her personal life. The vendor responded that she should talk to her sister, "the one from the documentary." The conversation was somewhat cryptic, and when she asked why he was suggesting this, he immediately hung up.

15

Plaintiff's Original Complaint
Angeline Ash v Service King Collision Repair, LLC, Locke Lord, LLP, Ancestry.com DNA LLC, 23andMe, Inc.

3.47    Plaintiff placed a call to Dyson Chase, whom she had not spoken to in several months, although Ms. Chase had sent Plaintiff several text messages, pictures, showing herself wearing a Texas pendant identical to the one Plaintiff was known for wearing (Ms. Chase had never been to Texas prior to meeting Plaintiff and had no contacts here), and pictures where she was taunting Plaintiff, telling her that she was now wearing her make up and lashes just like Plaintiff.

3.48    Plaintiff told Ms. Chase about the phone call she'd received from the vendor, and asked Ms. Chase if she had been undermining Plaintiff's case during her conflict with Farmer Brothers Co. Plaintiff imagined that this is what the vendor might have been referring to in his call. However, instead of answering the question, Ms. Chase responded: "you know, I have your accent down so perfect that people don't even know that it's not you when I speak to them on the phone." Plaintiff, who has a very distinctive Texas accent, asked Ms. Chase what she meant by that, and also asked her who they may know in common that Ms. Chase would be speaking with. Ms. Chase said she needed to go, and hung up without answering Plaintiff's questions.

3.49    In 2019, Plaintiff began interviewing for jobs, and noticed that her LinkedIn account had been hacked. While interviewing, she began receiving feedback from potential employers and recruiters that perhaps she was either lying about her law degree, or lying about the experience she had listed on her resume. There were several instances of Plaintiff undergoing an extensive interview processes for numerous jobs, then being promised a forthcomng offer letter, then ultimately being told that the company decided "not to hire" her.

3.50    Plaintiff's career has been focused on sourcing and procurement for corporations since she graduated law school in 2011. Her business expertise, paired with her law degree

16

Plaintiff's Original Complaint
Angeline Ash v Service King Collision Repair, LLC, Locke Lord, LLP, Ancestry.com DNA LLC, 23andMe, Inc.

provides her a set of skills that are unusual in her profession, and highly sought after. Her resume is specialized, due to her extensive supply chain background, law degree, and her experience in sourcing and contracting. While applying for jobs, Plaintiff began noticing numerous Director of Procurement job descriptions on LinkedIn that were identical copies of her specialized resume.

### Incident 3: Service King's Refusal to Change Plaintiff's Name

3.51    In August 2020, Plaintiff legally changed her name to Angeline Ash. Ash is a name of Syrian-Hebrew origin, and is her mother, Edie Cathleen Harlow's, birth name. Ms. Harlow was adopted at 13 by a stepfather, Bill Harlow. However, her birth father was a man named Oscar Tinsley Ash.

3.52    In late August of 2020, Plaintiff was contacted by a recruiter for Service King, for Senior Director of Procurement position. Plaintiff accepted the position, and was asked to complete the hiring documents. Plaintiff submitted her name change order, her driver's license and her social security card. Plaintiff's driver's license and social security card had not been updated; governement offices had been shut down due to the COVID pandemic, and Plaintiff could not get an appointment to change her documents until December 31, 2020. She submitted the documents as was, and explained the situation.

3.53    At the time of hiring, Plaintiff's driver's license read "Angeline Fayteen Houghtlin" (Fayteen was her middle name prior to her name change), and her social security card read "Angeline Palumbo Houghtlin" (her maiden name is Palumbo).

3.54    Plaintiff has been married twice: once to Mark Edward Houghtlin, which was the surname associated with her law degree, and also the surname carried by both her children, and a

17

Plaintiff's Original Complaint
Angeline Ash v Service King Collision Repair, LLC, Locke Lord, LLP, Ancestry.com DNA LLC, 23andMe, Inc.

second time to a man named Bret Williamson. This was a marriage of short duration, and Plaintiff at no time used the name Williamson professionally.

3.55  Service King set Plaintiff's email and payroll to the name Angeline Houghtlin. Prior to beginning the job, and after she started working there, Plaintiff contacted both her boss, Kathy Kraay and Service King's Human Resources Department numerous times requesting they change her name to Ash, but they refused to do so. They did not update her name for several months.

### Incident 4: Office In An Abandoned Building and Racial/Ethnic Harassment

3.56  Plaintiff was instructed by her boss, Ms. Kraay to office at 808 South Central Expressway in Richardson, TX. This building, according to Ms. Kraay, was the old Service King headquarters, and had originally been a bank before Service King purchased it. Service King's current corporate headquarters are at another location in Richardson, TX: 2375 North Glenville Drive. Ms. Kraay requested Plaintiff meet her at the 808 building for her first day of work. When Plaintiff arrived, she noticed that the building seemed abandoned, derilect, and constructively (if not actually) condemened. Wallpaper was peeled off the walls, many of the rooms were being used as junk rooms, piled with old equipment, chairs, and office furniture. There were cobwebs everywhere, and various crawling insects throughout the building. The breakroom had an empty vending machine, and there was no ice or refreshments, although the machines for such were there. There were large holes in several walls, and thick layers of dust throughout.

3.57  Ms. Kraay explained that she expected Plaintiff to office at this abandoned building, although Service King's other corporate employees worked from home. Ms. Kraay

18

Plaintiff's Original Complaint
Angeline Ash v Service King Collision Repair, LLC, Locke Lord, LLP, Ancestry.com DNA LLC, 23andMe, Inc.

explained that Service King had bought a large supply of masks and other COVID-related supplies, to hedge against potential shortages, and they were storing it all in this building. She wanted Plaintiff to office there in order to watch the inventory and "make sure none of it walks off." Plaintiff's team members (her direct reports), said they had been officing at the 808 location to keep an eye on the inventory, per Ms. Kraay's instruction, however, Plaintif did not see any evidence of such. The next day, Plaintiff came to the building, and noticed it was empty. In other words, the three direct reports who had been allegedly officing there to watch the inventory, were not there. When Plaintiff called to check on them, they each told her that Ms. Kraay told them that they could office at home now that Plaintiff had been hired.

 3.58 Ms. Kraay had set up numerous meet and greet appointments via Teams for Plaintiff to meet her peers throughout her first few days. On the second day, she had a meeting with another Senior Director on the Finance team, who also reported to Ms. Kraay. As soon as Plaintiff began the meeting, the man began haranguing her, telling her that the team she managed should be reporting to him not Plaintiff, that the company didn't need a Procurement team, so he didn't understand why they even hired Plaintiff, and that Plaintiff shouldn't be titled a Senior Director, that she should have the title Manager instead. He also told Plaintiff to watch her back, that he was planning to "take her down", and would take any opportunity to stab her "in the back", and that there was nothing she could do about it, since he was "in the club." When she asked what the club was, he said, "it's the Jewish club, and you're not in it." Plaintiff did not know this man, and had never met him before this call. She reported the incident to both her boss, Kathy Kraay and to Human Resources.

19

Plaintiff's Original Complaint
Angeline Ash v Service King Collision Repair, LLC, Locke Lord, LLP, Ancestry.com DNA LLC, 23andMe, Inc.

3.59    Plaintiff had many online Teams meetings with peers within those first three days, and in each meeting, her colleagues seemed shocked that she was officing at the 808 building. Each stated that the building was abandoned and dangerous, and that she probably shouldn't be there.

3.60    Plaintiff was not given a badge to enter the 808 building. Ms. Kraay told her that the badge machine wasn't working, and told her to use the badge of the Facilities Manager to enter and exit the building. After a few days, the Facilities Manager came to retrieve his badge, saying he needed to use it. Plaintiff asked how she would get in the building, and he said that they would have a badge for her when she returned from lunch.

3.61    When Plaintiff returned from lunch, she noticed that the door to the building was ajar, and that the security system was not on. Nor were any lights on in the building, although the reception area was lit by the sunlight coming in from the large windows. Plaintiff walked through the door, and tried to turn on the lights, but they didn't come on. She decided to go to her office anyway, to gather her laptop and work materials. However, when she walked past the reception desk, she noticed a movement in the hallway. It was a large black man, about 6'3", wearing what seemed to be a work uniform—gray Dickies-style pants and matching shirt, however there was no badging or logo on the clothing. Plaintiff asked him why he was there, and he said he was there to repair the printers (there was only one working printer), and he requested that Plaintiff show him around the darkened building. Plaintiff asked to see his work order. He said he didn't have a work order, did not know the name of the Service King contact who requested his services, and when asked what company he was with, seemed confused. He repeatedly asked Plaintiff to "come to the back" to help him look for the right printer. Plaintiff

20

Plaintiff's Original Complaint
Angeline Ash v Service King Collision Repair, LLC, Locke Lord, LLP, Ancestry.com DNA LLC, 23andMe, Inc.