IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ANGELINE ASH, | § § | |
| Plaintiff, | § § | |
| V. | § § | No. 3:23-cv-34-K-BN |
| SERVICE KING PAINT AND BODY, LLC, ET AL., | § § § § | |
| Defendants. | § § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Plaintiff Angeline Ash filed a *pro se* complaint against two personal genomics companies and two of her former employers alleging a claim of racial discrimination in violation of 42 U.S.C. § 1981. *See* Dkt. No. 3. Ash also moves for leave to proceed *in forma pauperis* (IFP). *See* Dkt. No. 4. So United States District Judge Ed Kinkeade referred Ash's lawsuit to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference. The Court will grant Ash leave to proceed IFP through a separate order. And the undersigned enters these findings of fact, conclusions of law, and recommendation that, for the reasons and to the extent set out below, the Court should dismiss the complaint for Ash's failure to allege a claim on which relief may be granted.

**Legal Standards**

A district court is required to screen a civil action filed IFP and may summarily dismiss that action, or any portion of the action, if, for example, it fails to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii). "The language of §

1915(e)(2)(B)(ii) tracks the language of Federal Rule of Civil Procedure 12(b)(6)." *Black v. Warren*, 134 F.3d 732, 733-34 (5th Cir. 1998) (per curiam).

Under Federal Rule of Civil Procedure 8(a)(2), a complaint need not contain detailed factual allegations, but a plaintiff must allege more than labels and conclusions, and, while a court must accept all of the plaintiff's allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

In fact, "the court does not 'presume true a number of categories of statements, including legal conclusions; mere labels; threadbare recitals of the elements of a cause of action; conclusory statements; and naked assertions devoid of further factual enhancement.'" *Armstrong v. Ashley*, 60 F.4th 262, 269 (5th Cir. 2023) (quoting *Harmon v. City of Arlington, Tex.*, 16 F.4th 1159, 1162-63 (5th Cir. 2021)).

To survive dismissal, plaintiffs must instead "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that they contend entitle them to relief. *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014) (per curiam) (citing FED. R. CIV. P. 8(a)(2)-(3), (d)(1), (e)); *see also Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 899 (5th Cir. 2019) ("'Determining whether a complaint states a plausible claim for relief' is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" (quoting *Iqbal*, 556 U.S. at 679; citing *Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) ("[T]he degree of specificity

necessary to establish plausibility and fair notice, and therefore the need to include sufficient factual allegations, depends on context."))).

Put differently, a plaintiff, through the complaint, must provide the Court enough factual content to demonstrate an entitlement to relief. *Compare Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."), *with Robbins*, 519 F.3d at 1247 ("The burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." (quoting *Twombly*, 550 U.S. at 556)).

## Analysis

Ash, who alleges that she is an experienced attorney, filed a complaint replete with alleged facts. But the complaint's factual matter that the Court must accept as true fails to plead a plausible claim under Section 1981, a statute that "generally forbids racial discrimination in the making and enforcement of private contracts, including private employment contracts, whether the aggrieved party is black or white." *Bobo v. ITT, Cont'l Baking Co.*, 662 F.2d 340, 342 (5th Cir. 1981) (citations omitted).

Section 1981 "guarantees to '[a]ll persons within the jurisdiction of the United States ... the same right ... to make and enforce contracts ... as is enjoyed by white citizens.'" *Johnson v. PRIDE Indus., Inc.*, 7 F.4th 392, 399 (5th Cir. 2021) (quoting 42 U.S.C. § 1981(a)). "It defines the phrase 'make and enforce contracts' to include 'the making, performance, modification, and termination of contracts, and the enjoyment

of all benefits, privileges, terms, and conditions of the contractual relationship.'" *Id.* (quoting 42 U.S.C. § 1981(b)). And, "[w]hile the statute's text does not expressly discuss causation, it is suggestive," such that, "[t]o prevail, a plaintiff must initially plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1015, 1020 (2020); *see Williams v. Waste Mgmt., Inc.*, 818 F. App'x 315, 325 (5th Cir. 2020) (per curiam) ("Although similar in some respects to Title VII, 42 U.S.C. § 1981 requires plaintiff's showing but-for causation." (citing *Comcast*, 140 S. Ct. at 1014)).

Ash's burden to plead factual content to allow the Court to reasonably infer that each defendant is liable under Section 1981 requires that she "plead sufficient facts on all of the ultimate elements of [this] claim." *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 470 (5th Cir. 2016) (citations omitted).

Those elements are that (1) she is a member "of a racial minority; (2) Defendants intended to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute." *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 386 (5th Cir. 2017) (citing *Bellows v. Amoco Oil Co.*, 118 F.3d 268, 274 (5th Cir. 1997); *Green v. State Bar of Tex.*, 27 F.3d 1083, 1086 (5th Cir. 1994)).

As to the second element, intentional discrimination, "[a]lthough 'naked allegation[s]' of discriminatory intent are too conclusory to survive a motion to dismiss, discriminatory motive may be – and commonly is – demonstrated by

circumstantial evidence," so "[a]n allegation that similarly situated non-minorities received better treatment 'could create the necessary inference and set the predicate for establishing the section 1981 claim.'" *Id.* (citations omitted).

"'Any claim brought under § 1981 ... [also] must initially identify an impaired 'contractual relationship,' under which the plaintiff has rights,' but '[s]uch a contractual relationship need not already exist, because § 1981 protects the would-be contractor along with those who already have made contracts.'" *Id.* at 388 (quoting *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006)). And, if a plaintiff "does not allege an existing contract, it must plead facts that plausibly demonstrate that [a defendant's] alleged discrimination concerned a prospective contract." *Id.*

"In addition," as explained above, plaintiffs "must allege 'but-for' causation." *Thomas v. Cook Children's Health Care Sys.*, No. 4:20-cv-1272-O, 2021 WL 4796679, at *6 (N.D. Tex. July 28, 2021) (citing *Comcast*, 140 S. Ct. at 1019); *see Hoyt v. Am. Nat'l Ins. Co.*, No. 3:20-cv-545-L, 2021 WL 2823449, at *5 (N.D. Tex. July 6, 2021) (same); *see also Simmons v. Triton Elevator, LLC*, No. 3:19-cv-1206-B, 2020 WL 7770245, at *3 (N.D. Tex. Dec. 30, 2020) ("Contrary to Simmons's suggestion, he has the burden of pleading facts that, taken as true, permit the Court to infer 'that race was a but-for cause of [his] injury' in order to sustain his § 1981 discrimination claim. Indeed, the Supreme Court has clarified that *McDonnell Douglas* has no bearing on the 'causation standards' for discrimination claims. Rather, the *McDonnell Douglas* framework is 'a tool for assessing claims, typically at summary judgment, when the plaintiff relies on indirect proof of discrimination.' So irrespective of the *McDonnell*

*Douglas* framework, a plaintiff alleging a § 1981 discrimination claim must 'initially plead and ultimately prove that, but for [his] race, [he] would not have suffered the loss of legally protected right.'" (citations omitted)).

Ash first sets out that she "suffered extreme harassment specifically from African-Americans and Jewish-Americans" and that "[a]ny 'identity' Plaintiff had at any point as an African-American female was due to the ethnicity results provided by Ancestry.com." Dkt. No. 3, ¶ 3.03; *see, e.g.*, *id.*, ¶ 3.06 ("Plaintiff asserts that the fake DNA test, fake relative matches, and the well-publicized documentary created by 23andMe was a concerted effort to deny her of her Hebrew heritage, associate her DNA with members of the Gee family, whose DNA appears in a criminal forensic database, associate her with Dyson Chase, a known identity thief, and ultimately create a stigma in her life around being the product of an African-American man who allegedly raped a white woman."); *see also id.*, ¶¶ 3.20-3.50.

She next alleges that, generally speaking, "[d]uring the entire term of her employment with Service King[,] Plaintiff experienced severe discrimination, retaliation, harassment and a hostile work environment, based upon her perceived race as African American, her actual race as Hebrew, and her color." *Id.*, ¶ 3.07. She makes the same general allegations as to another employer, Locke Lord. *See id.*, ¶ 3.13.

More specifically, Ash cites Service King's refusal to change her name (or at least that "[t]hey did not update her name for several months"); its initially housing her in an allegedly abandoned building; a comment by a co-worker that she was not

in "the Jewish club"; Service King's allegedly monitoring her while she worked from home; harassment by her supervisor, who "contacted HR, and asked them to meet with Plaintiff, claiming that Plaintiff planned on 'suing Service King because she's black,'" which Ash alleges "seemed to be connected to ongoing harassment related to Plaintiff's EEOC complaint against" a former employer; and Service King's making her "fe[el] that he was being used as a patsy … for an embezzlement scheme," which caused her to "quit on the spot." *Id.*, ¶¶ 3.51-3.67; *see, e.g., id.*, ¶¶ 3.62, 3.63 ("Plaintiff began officing at home, but she began to experience numerous situations where Ms. Kraay would get upset if she left her desk. If Plaintiff took a meeting in another room in her house, Ms. Kraay instructed her to stay in her home office. Plaintiff realized Ms. Kraay was monitoring her through her laptop. At this point, Plaintiff found out that she and her family were being watched through their Ring doorbell interior camera. Plaintiff's security system stored audible recordings of someone breathing as they apparently watched Plaintiff and her children through the security camera. Colleagues at Service King began taunting Plaintiff by repeating word for word segments of conversations she's had with her children in their kitchen, indicating that employees at Service King had access to her private conversations and activities either through the laptop, or the security system.").

Ash makes similar allegations against Locke Lord. *See id.*, ¶¶ 3.68-375; *see, e.g., id.*, ¶ 3.68 ("Plaintiff began a job at Locke Lord, LLP in January of 2022, and immediately began experiencing harassment related to being 'black,' and several incidents that seemed related to the use of her name, Ash. When she encountered

vendors who had Jewish-sounding surnames, she was told not to speak to them directly, and to send any questions through someone in the c-suite. If she went to the restroom, she was followed. She noticed that she was being monitored through the speaker in her desk phone; it would light up during any personal conversations she was having, and then she would immediately get a phone call from her boss, who worked out of Houston, and who would ask questions specific to Plaintiff's private conversations."); *id.*, ¶ 3.75 (concluding that alleged actions amounted to "a scheme to set her up for some sort of financial impropriety, the same as she'd experienced at Service King").

Ash also makes claims concerning alleged harassment against her family. *See id.*, ¶¶ 3.76-3.78. And she sums up her fact section,

> [s]ince being fired from Locke Lord, Plaintiff has been unable to find work, due to what she believes is a conspiratorial "telephone game" going on behind her back as she's applying for jobs – former colleagues and Kathy Kraay in particular, and friends and family enlisted by Service King to contact HR departments, companies and any potential employer to spread these rumors and lies. The core of the harassment seems to be focused around the DNA test regarding alleged black ancestry, the false rape claim, and extreme harassment related to the use of her name, Ash. Plaintiff at this point is homeless, cannot support her family, cannot get a job, and has no health insurance.

*Id.*, ¶ 3.79.

Ash then "incorporate[s]" all her allegations into her single cause of action, for racial discrimination under Section 1981, that "Defendants engaged in a single, continuous course of discrimination against Plaintiff because of her race, and in retaliation, to destroy Plaintiff, her career, and professional reputation and personal life." *Id.*, ¶¶ 4.01, 4.04. In sum, according to Ash, but "for Ms. Chase appearing as a

relative match on both Ancestry.com and 23andMe, and if not for 23andMe filming and marketing a documentary that they initiated, holding out Plaintiff's father to be Garland Gee and Dyson Chase as Plaintiff's sister, both of whom may have criminal records, Plaintiff's career, reputation, and [personal] life would not have been harmed." *Id.*, ¶ 4.05.

Ash may allege that she is the object of a vast conspiracy. But, even if the Court were to find for pleading purposes that the complaint establishes the first and third elements essential to a Section 1981 claim – that a plaintiff is a member of a racial minority, and that the discrimination concerns an activity enumerated in the statute – Ash's complaint fails to include (1) non-conclusory facts from which the Court may infer a discriminatory intent (even through circumstantial allegations) and (2) non-conclusory facts that "permit the Court to infer that race was a but-for cause of her injury." *Simmons*, 2020 WL 7770245, at *3 (cleaned up); *see, e.g., id.* ("He alleges multiple racially discriminatory comments made by individuals at Triton, such as use of the terms 'homeboy,' 'monkey,' '[w]igger,' and 'nigger,' as well as Armstrong's 'secret' that he 'had once dated an African-America[n] woman[.]' But Simmons does not allege facts creating the inference that he was fired *because* of his race." (citations omitted)).

The Court should therefore dismiss the complaint.

### Leave to Amend

The time to file objections to this recommendation (further explained below) allows Ash an opportunity to explain how she would cure the deficiencies identified

above (that is provide enough facts to plausibly allege all elements of her Section 1981 claim) and thus show the Court that this case should not be dismissed with prejudice at this time and that the Court should instead grant her leave to amend the claim. *See Scott v. U.S. Bank Nat'l Ass'n*, 16 F.4th 1204, 1209 (5th Cir. 2021) (per curiam) ("A court should freely give leave to amend when justice so requires, FED. R. CIV. P. 15(a)(2), but a movant must give the court at least some notice of what his or her amendments would be and how those amendments would cure the initial complaint's defects. *Thomas v. Chevron U.S.A., Inc.*, 832 F.3d 586, 590 (5th Cir. 2016). If the plaintiff does not provide a copy of the amended complaint nor explain how the defects could be cured, a district court may deny leave. *McKinney v. Irving Indep. Sch. Dist.*, 309 F.3d 308, 315 (5th Cir. 2002) (affirming denial of leave to amend where plaintiffs 'failed to amend their complaint as a matter of right, failed to furnish the district court with a proposed amended complaint, and failed to alert both the court and the defendants to the substance of their proposed amendment').").

If Ash fails to show that leave to amend should be granted, the Court should dismiss this case with prejudice.

## Recommendation

The Court should dismiss this action with prejudice unless, within the time to file objections, Plaintiff Angeline Ash satisfactorily shows that she can amend the complaint to allege a plausible claim under 42 U.S.C. § 1981.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these

findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: May 1, 2023

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE